THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONSORTIUM OF SERVICES INNOVATION A/K/A CSI,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | CASE NO. C19-0750-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to dismiss Plaintiff's second amended complaint (Dkt. No. 32). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.  **BACKGROUND**

On October 30, 2019, the Court dismissed Plaintiff's first amended complaint, finding that the complaint and accompanying exhibits failed to establish that Defendant either directly participated in the alleged underlying conduct or was liable under an alter ego theory of liability. (*See* Dkt. No. 27 at 9–10.) The Court directed Plaintiff to file an amended complaint curing the defects identified by the Court. (*Id*. at 10.)

On November 13, 2019, Plaintiff filed a second amended complaint. (Dkt. No. 28.) The

Court previously set forth an extensive recitation of the factual allegations contained in Plaintiff's first amended complaint, which largely mirror those in Plaintiff's second amended complaint. (*See* Dkt. No. 27 at 1–7; *compare* Dkt. No. 20 at 3–19, *with* Dkt. No. 28 at 3–19.) The salient changes are Plaintiff's new allegations that the actions underlying its claims were undertaken by Defendant's subsidiaries, acting as Defendant agents. (*Compare* Dkt. No. 28 at 3, 4–7, 9, 11, 15, *with* Dkt. No. 20).[1] Defendant now moves to dismiss Plaintiff's second amended complaint. (Dkt. No. 32.)

## II. DISCUSSION

### A. Motion to Dismiss Legal Standard

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. The plaintiff is obligated to provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) "can [also] be based on the

---

[1] In its second amended complaint, Plaintiff describes its preexisting relationship with Defendant, stating that the parties "worked together in various capacities including signing a Microsoft Academy Service Partner Agreement (the"MASP") [sic]." (Dkt. No. 28 at 3; *see* Dkt. Nos. 28-1–28-3.) But Plaintiff acknowledges that the MASPs are not at issue in this case, (*see* Dkt. No. 28 at 3), and by their own terms the MASPs explicitly do not apply to sales of the goods at issue in this case or agreements between Plaintiff and third parties, (*see* Dkt. Nos. 28-1 at 2, 4; 28-2 at 2, 4; 28-3 at 2, 4). Similarly, Plaintiff cites an agreement between Defendant and Certiport Inc. but does not explain the relevancy of that agreement to this case. (*See* Dkt. No. 28 at 3) (citing Dkt. No. 28-4)

lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Although the court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). Moreover, the court may consider documents attached to the complaint, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

**B.  Defendant as Proper Party**

Plaintiff has asserted several grounds it contends establish Defendant's liability for the underlying events in this case, (*see* Dkt. No. 28 at 19–26), which Defendant argues do not establish that Defendant is a proper party to this suit, (*see* Dkt. No. 32 at 13–17). The Court examines each asserted ground in turn.

1. <u>Sale of Defendant's Goods or Services</u>

Plaintiff alleges that Defendant's subsidiaries acted as Defendant's agents to conduct business related to Defendant's products and services, emphasizing that Defendant's subsidiaries do not "produce any products or services separate from those offered by Defendant and therefore are acting as agents of Defendant to further Defendant's own business purposes." (*Id*. at 19, 22, 24.)

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). But a parent corporation may be liable for the acts of a subsidiary when "the parent exercise[s] total control over the subsidiary, well beyond the normal control exercised by parents over subsidiaries," and thereby renders the subsidiary an agent of the parent.

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, Case No. C08-1372-RSM, Dkt. No. 331 at 12 (W.D. Wash. 2010), *aff'd*, 447 F. App'x 814 (9th Cir. 2011). To evaluate whether a subsidiary is properly considered an agent of its parent corporation, the court looks to whether the parent exercises "complete domination," the subsidiary is a shell corporation, or the parent uses its ownership interest to "command rather than merely cajole" the subsidiary. *Id*. (quoting *Japan Petroleum v. Ashland Oil, Inc.*, 456 F. Supp. 831, 845 (D.Del. 1978); *Esmark, Inc. v. Nat'l Labor Relations Bd.*, 887 F.2d 739, 757 (7th Cir. 1989)). Alternatively, a parent may be liable under a direct participant theory if a plaintiff establishes the "parent's specific direction or authorization of the manner in which an activity is undertaken and [the] foreseeability" of any resultant injury. *Forsythe v. Clark USA, Inc.,* 224 Ill.2d 274, 289 (Ill. 2007) (reviewing and synthesizing state and federal case law analyzing when a parent corporation may be held liable for the actions of its subsidiary).

Plaintiff's allegation that Defendant's subsidiaries sold Defendant's products and services, standing alone, is insufficient to establish a plausible claim that Defendant's subsidiaries were thus acting as Defendant's agents during the events at issue. *See, e.g.*, *whiteCryption Corp. v. Arxan Techs., Inc.*, 2016 WL 3275944, slip op. at 1, 11 (N.D. Cal. 2016) (concluding that plaintiff's factual allegations as to subsidiary's status as parent corporation's agent, including subsidiary's sale of parent corporation's software technology and use of internet addresses with parent corporation's name, and the substantial roles of the parent corporation's officers in the subsidiary's business dealings, were insufficient to establish plausible claim of agency liability); (*see* Dkt. No. 28 at 19, 22, 24). Plaintiff has not otherwise asserted specific factual allegations that Defendant exercised "complete domination" over its subsidiaries, that Defendant's subsidiaries are shell corporations, that Defendant used its ownership interest to "command" its subsidiaries, or that Defendant directed or authorized the subsidiaries' actions in this case. *See Japan Petroleum*, 456 F. Supp. at 845; *Esmark, Inc.*, 887 F.2d at 757; *Forsythe,* 224 Ill.2d at 289; (*see generally* Dkt. No. 28). Plaintiff's response to Defendant's motion does

not direct the Court to additional relevant factual allegations in the second amended complaint or provide legal authority demonstrating that the mere sale of a parent corporation's goods or services establishes a subsidiary as an agent of the parent corporation. (*See* Dkt. No. 35 at 2, 5–6.) Therefore, Plaintiff has not established a plausible claim that Defendant may be held liable for its subsidiaries' actions based on its subsidiaries' sale of Defendant's goods or services.

### 2. Vicarious Liability – Actual Authority

Plaintiff asserts that Defendant conferred actual authority on its subsidiaries Microsoft Arabia, Microsoft Ireland, and Microsoft Germany and thus is vicariously liable for those entities' relevant actions, citing a cooperation agreement between Plaintiff and Microsoft Arabia which provides that Microsoft Arabia "represents Global Microsoft . . . in" Saudi Arabia. (*See* Dkt. Nos. 28 at 19–20, 22–25; 28-12 at 2.)

A principal may be liable for its agent's actions when the agent has either express or implied actual authority to act on the principal's behalf. *See Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) (citing Restatement (Third) of Agency § 2 intro. Note (2006)); *accord King v. Riveland*, 886 P.2d 160, 165 (Wash. 1994). "Express actual authority derives from an act specifically mentioned to be done in a written or oral communication," whereas "[i]mplied actual authority comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction." *Salyers*, 871 F.3d at 940 (quoting *NLRB v. District Council of Iron Workers of the State of California and Vicinity*, 124 F.3d 1094, 1098 (9th Cir. 1997)). Both forms of actual authority depend "on the objective manifestations made by the principal to the agent." *Revitalization Partners, LLC v. Equinix, Inc.*, Case No. C16-1367-JLR, Dkt. No. 22 at 9 (W.D. Wash. 2017).

The document cited by Plaintiff contains, at best, Microsoft Arabia's representation that it was acting on Defendant's behalf. (*See* Dkt. Nos. 28 at 20, 23–25; 28-12 at 2.) It does not evidence an objective manifestation by Defendant to Microsoft Arabia regarding Microsoft Arabia's express or implied actual authority to act on Defendant's behalf. (*See* Dkt. No. 28-12.)

The second amended complaint does not allege any other objective manifestation made by Defendant to its subsidiaries sufficient to confer expressed or implied actual authority upon them. (*See generally* Dkt. No. 28.) And Plaintiff's response to Defendant's motion again fails to direct the Court to relevant factual allegations or legal authority. (*See* Dkt. No. 35 at 5.) Therefore, Plaintiff has not established a plausible claim that Defendant conferred actual authority upon its subsidiaries and thus may be held liable for the actions underlying Plaintiff's claims.

### 3. Vicarious Liability – Apparent Authority

Plaintiff asserts that Defendant conferred apparent authority upon its subsidiaries and thus is vicariously liable for those subsidiaries' relevant actions. (*See* Dkt. No. 28 at 20, 23, 25.) Plaintiff specifically asserts that Defendant affirmatively held out its subsidiaries as having authority to act on its behalf, citing Defendant's subsidiaries' use of "@microsoft.com" email addresses during their interactions with Plaintiff. (*See id.*)

"Apparent authority depends on the principal's objective manifestations of the agent's authority to the third party claiming apparent authority." *Revitalization Partners, LLC*, Case No. C16-1367-JLR, Dkt. No. 22 at 9; *accord D.L.S. v. Maybin*, 121 P.3d 1210, 1214 (Wash. Ct. App. 2005). "Such manifestations much cause the third party to actually or subjectively believe that the agent has the authority to act for the principal, and that belief must be objectively reasonable." *Revitalization Partners, LLC*, Case No. C16-1367-JLR, Dkt. No. 22 at 9. An individual or entity's use of a corporation's email address is insufficient to convey apparent authority upon that individual or entity. *See, e.g.*, *whiteCryption Corp.*, 2016 WL 3275944, slip op. at 1, 11; *Spam Arrest, LLC v. Replacements, Ltd.*, Case No. C12-0481-RAJ, Dkt. No. 91-1 at 17 (W.D. Wash. 2013) ("As a matter of law, Sentient Jet's authorization for its employees to use its email addresses did not vest them with actual or apparent authority to enter the Sender Agreement.").

Defendant's subsidiaries' use of "@microsoft.com" email addresses is insufficient to

establish that they were acting with apparent authority during their interactions with Plaintiff. *See whiteCryption Corp.*, 2016 WL 3275944, slip op. at 11l; *Spam Arrest, LLC*, Case No. C12-0481-RAJ, slip op. at 9. And while Plaintiff conclusively asserts that "Defendant affirmatively held Defendant's agents out as having authority to act on the Defendant's behalf" during the negotiations between Defendant's subsidiaries and Plaintiff, (*see* Dkt. No. 28 at 20, 23, 25), the second amended complaint does not set forth factual allegations supporting this assertion, (*see id*. at 3–19). Similarly, the many exhibits attached to Plaintiff's second amended complaint do not evidence an objective manifestation by Defendant to Plaintiff regarding the authority of Defendant's subsidiaries to act on Defendant's behalf. (*See* Dkt. Nos. 28-1–28-47.) Again, Plaintiff's response to Defendant's motion does not direct the Court to relevant factual allegations in the second amended complaint or applicable legal authority. (*See* Dkt. No. 35 at 6.)[2] Therefore, Plaintiff has not established a plausible claim that Defendant conferred apparent authority upon its subsidiaries and thus may be held liable for the actions underlying Plaintiff's claims.[3]

---

[2] In its response, Plaintiff argues that "[t]hese email addresses were issued by Defendant, to its subsidiaries, in an attempt to bestow an expectation of authority that derived from Defendant. That expectation of authority assuaged CSI into contacting [sic] with Defendant's subsidiaries. CSI would have no reason to uncover this deception given their previous working relationships and interactions." (Dkt. No. 35 at 6.)

[3] Plaintiff's second amended complaint periodically alleges that Defendant's subsidiaries acted as its agents in the events underlying Plaintiff's claims. (*See, e.g.*, Dkt. No. 28 at 7) ("Microsoft Arabia, acting as agent for Defendant, signed a Memorandum of Understanding . . . with TVTC."). But as discussed above, Plaintiff has not established a plausible claim that Defendant's subsidiaries were in fact acting as Defendant's agents during the events at issue. *See supra* Sections II.B.1–II.B.3. Plaintiff's conclusory allegations are insufficient to establish a plausible claim as to an agency relationship between Defendant and its subsidiaries such that Defendant may be held liable for its subsidiaries' actions. *See Iqbal*, 556 U.S. at 678; *Balistreri*, 901 F.2d at 699.

In its response to Defendant's motion to dismiss, Plaintiff argues that it has pleaded that Defendant maintained a policy of only selling volume licenses to governmental or academic institutions and that either Defendant or its agents listed TVTC as the customer to circumvent this policy, thereby causing Plaintiff's damages. (*See* Dkt. No. 35 at 6; *see also* Dkt. No. 28 at 6.) But the volume license agreement summary cited by Plaintiff was sent by Microsoft Ireland

In sum, while Plaintiff describes Defendant's arguments as an "attempt to deflect and shirk its responsibility through a highly sophisticated legal shell game whereby harmed parties act in good faith, only to never see the shells turned over," (*see* Dkt. No. 35 at 1), the second amended complaint does not plausibly establish Defendant's participation in or liability for the underlying actions at issue in this case. *See Iqbal*, 556 U.S. at 678. Therefore, Plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).[4]

### C. Jurisdictional Discovery

In its response to Defendant's motion to dismiss, Plaintiff asks the Court for leave to conduct jurisdictional discovery. (*See* Dkt. No. 35 at 2, 10.) Generally, jurisdictional discovery may be granted where a defendant challenges the court's personal jurisdiction over it. *See Puget Sound Surgical Ctr., P.S. v. Aetna Life Ins. Co.*, Case No. C17-1190-JLR, Dkt. No. 61 at 17 (W.D. Wash. 2018). Accordingly, jurisdictional discovery is appropriate where "pertinent facts bearing on the question of jurisdiction are controverted or whether a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).

Defendant has not challenged the Court's jurisdiction. (*See* Dkt. No. 38 at 12.) And

---

Operations Limited, not Defendant. (*See* Dkt. No. 28-11 at 2–3.) Plaintiff's bare assertion that it was Defendant who listed TVTC as the customer on the volume license summary despite the document being sent by Microsoft Ireland, and who did so to circumvent Defendant's own policy and boost its earnings, is insufficient to establish a plausible claim against Defendant. *See Iqbal*, 556 U.S. at 678; *Steckman*, 143 F.3d at 1295–96. And to the extent that Plaintiff is attempting to argue that Defendant exercised sufficient control over its subsidiaries to render them its agents, the existence of a general policy set by a parent corporation is insufficient to establish an agency relationship between it and its subsidiaries. *See Bestfoods*, 524 U.S. at 72; *whiteCryption Corp.*, 2015 WL 3799585, slip op. at 2; *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1235 (N.D. Cal. 2004).

[4] As Plaintiff has failed to establish that Defendant is a proper party to this action, the Court does not address whether Plaintiff's claims of fraud, breach of contract, or violation of the Washington Consumer Protection Act are subject to dismissal under Rule 12(b)(6). (*See* Dkt. No. 28 at 19–26.)

ORDER
C19-0750-JCC
PAGE - 8

Plaintiff's request for leave to conduct jurisdictional discovery is bereft of any citation to the record or substantive argument establishing either that facts pertinent to the question of jurisdiction are controverted or that a more satisfactory showing of jurisdictional facts is necessary. *See Butcher's Union Local No. 498*, 788 F.2d at 540; (Dkt. No. 35 at 2, 10). Therefore, Plaintiff's request for leave to conduct jurisdictional discovery is DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's second amended complaint (Dkt. No. 32) is GRANTED. Because Plaintiff's claims against Defendant have now been asserted three times and been dismissed twice for failure to state a claim upon which relief may be granted as to Defendant, and because Plaintiff has not demonstrated that it will be able to cure the deficiencies identified by the Court if granted further opportunities to amend its claims, Plaintiff's claims are DISMISSED with prejudice as to Defendant Microsoft Corporation. *Callan v. Motricity Inc.*, Case No. C11-1340-TSZ, Dkt. No. 124 at 16 (W.D. Wash. 2013), *aff'd sub nom. Mosco v. Motricity, Inc.*, 649 F. App'x 526 (9th Cir. 2016).

DATED this 24th day of February 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C19-0750-JCC
PAGE - 9